UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

WILFREDO VARGAS,                    :
                                    :          **REPORT AND**
                    Plaintiff,      :          **RECOMMENDATION**
                                    :
        -against-                   :          15-CV-6859 (RRM)(PK)
                                    :
JET PERU-COURIER CORP., JET PERU    :
MONEY REMITTERS INC., LEONER F.     :
AGUILAR, and VICTORIA ESPANA,       :
                                    :
                    Defendants.     :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Wilfredo Vargas brings this action against Corporate Defendants Jet Peru-Courier

Corp. and Jet Peru Money Remitters Inc., and Individual Defendants Leonor F. Aguilar and Victoria

Espana (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29

U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.* (*See*

Compl., Dkt. 1.)

Before this Court on referral from the Honorable Roslynn R. Mauskopf are Plaintiff's

Motion to Strike Answer and Enter Default Judgment ("Plaintiff's Motion") and Defendants'

Motion to Stay the Action ("Defendants' Cross-Motion"). (*See* December 19, 2017 Order.) For the

reasons stated herein, the undersigned respectfully recommends that Plaintiff's Motion be granted,

and Defendants' Cross-Motion be denied.

## FACTUAL BACKGROUND

The following facts are taken from the Complaint. The Corporate Defendants are New

York corporations in the business of "remittances, money exchange and other services through

electronic and traditional media," with a principal place of business at 40-06 81st Street, Jackson

Heights, New York 11372. (Compl. ¶¶ 6-7, 23.) They are "part of a network of international

companies" in this business and have direct presence in at least eight countries. (*Id.* ¶ 23.)

Defendant Leonor Aguilar is the owner, President, and Chief Executive Officer of the Corporate Defendants as well as an officer, director, manager, supervisor, and proprietor of the Corporate Defendants (*id.* ¶ 9); Defendant Victoria Espana is an "officer, director, supervisor and managing agent of the Corporate Defendants" (*id.* ¶ 10).  Both Individual Defendants "actively participate[ ] in the day-to-day operations of the Corporate Defendants."  (*Id.* ¶¶ 10, 19, 21.)

Plaintiff was hired in 1987 as a "non-exempt cashier/customer service attendant" and worked for Defendants in that capacity until about September 14, 2015.  (*Id.* ¶¶ 13, 32-33.)  Plaintiff worked nine hours with an hour break each day, six days per week, between December 2009 and April 2013, a period of 177 weeks.  (*Id.* ¶ 35.)  He worked ten and one half hours a day without any break time, six days per week, between May 2013 and September 14, 2015, a period of 124 weeks. (*Id.* ¶ 36.)  Between December 2009 and December 2011, Plaintiff was paid $190 a week and, between January 2012 and September 2015, he was paid $380 a week.  (*Id.* ¶¶ 37-39.)

## **PROCEDURAL BACKGROUND**

On December 2, 2015, Plaintiff brought this action on behalf of himself and other similarly situated employees, against Defendants seeking compensation for unpaid minimum and overtime wages under the FLSA and NYLL, spread-of-hour premiums under the NYLL, statutory damages for violations of wage statement and record-keeping requirements under the NYLL, liquidated damages, pre-judgment interest, and attorneys' fees and costs.  (*Id.* ¶¶ 40-43, 52-62, 68-77.)  On March 1, 2016, an Answer to the Complaint was filed on behalf of all Defendants.  (Answer, Dkt. 12.)  Following the Initial Conference on April 27, 2016, Plaintiff served his Requests for Document Production and Interrogatories on Defendants on May 10, 2016.  (*See* Clienti Decl. ¶¶ 18-20, Dkt. 33.)  Despite several discussions between counsel, Defendants failed to serve responses.  (*See id.* ¶¶ 21-22.)  On August 18, 2016, Plaintiff filed a motion to compel Defendants' response.  (Pl.'s Motion to Compel, Dkt. 18; *see also* Clienti Decl. ¶ 22.)

On August 22, 2016, Defendants' counsel, Michael Chong, filed a motion to withdraw as counsel citing as reasons Defendants' failure to respond to counsel's requests for payment of legal fees and a general breakdown in communication. (Motion to Withdraw as Counsel ¶ 7, Dkt. 19-1.) At the motion hearing during which Defendant Aguilar appeared by phone from Peru, she was advised that she could represent herself, but that the Corporate Defendants must be represented by counsel. (*See* September 7, 2016 Mins.) She stated that she would attempt to secure new counsel. (*Id.*) The motion to withdraw as counsel was granted and Defendants' original attorney was set to be terminated from this action on September 23, 2016, the date by which Defendants were supposed to retain new attorney and have him or her file a notice of appearance. (*See id.*) The Court stayed all discovery deadlines and deferred ruling on Plaintiff's motion to compel. (*Id.*)

Defendants failed to secure new counsel by September 23, 2016, and failed to appear at the status conference held on September 30, 2016. (*See* September 30, 2016 Mins.) The Court ordered Defendants to respond to Plaintiff's motion to compel by October 31, 2016, and warned that their failure to comply may result in sanctions. (*See id.*) In a letter dated October 12, 2016, Defendant Aguilar requested an additional 30 days to "hire a new attorney." (Aguilar's October 12, 2016 Letter, Dkt. 22.) The Court granted the motion and stayed discovery another 30 days. (*See* October 19, 2016 Order.) The Court further instructed Defendants to respond to Plaintiff's pending motion to compel discovery and warned again that failure to do so may result in sanctions. (*See id.*)

Two days before the deadline, attorney Sanders Denis filed a notice of appearance as Defendant Aguilar's new counsel and requested an extension of time to respond to Plaintiff's discovery demands. (Denis Notice of Appearance, Dkt. 23; Motion for Extension of Time, Dkt. 24.) The Court granted the request and extended the deadline to February 1, 2017. It also ordered Attorney Denis to clarify whether he represents only Defendant Aguilar or Corporate Defendants as well, and ordered the parties to file a joint status report by February 10, 2017. (December 7, 2016

Order; February 3, 2017 Order.) On December 11, 2016, Attorney Denis filed a notice of appearance as counsel for Corporate Defendants.[1] (*See* Dkts. 25-26.)

The Court held a conference by telephone on February 15, 2017 and, after hearing argument, granted Plaintiff's motion to compel discovery, ordered Defendants to provide all remaining discovery documents to Plaintiff by February 28, 2017, and ordered the parties to file a status report by March 1, 2017. (*See* February 15, 2017 Order.) The Court also scheduled a settlement conference for April 12, 2017 and ordered the parties to submit *ex parte*, confidential settlement statements by April 3, 2017. (*See id.*) On March 2, 2017, the parties filed a joint status report in which Plaintiff argued that Defendants' production was "wholly" insufficient; Defendants disagreed. (March 2, 2017 Status Report, Dkt. 29.) Plaintiff also sought a conference to discuss its anticipated motion for sanctions—to strike Defendants' Answer or to preclude Defendants from offering any evidence at trial. (*See id.*) Another telephone conference was held on March 7, 2017. The Court granted "a final opportunity to produce all discovery to Plaintiff by April 7, 2017," or otherwise show cause why sanctions should not be imposed on Defendants under Federal Rule of Civil Procedure 37. (March 7, 2017 Order, Dkt. 30.)

On April 7, 2017, the Court granted Plaintiff's unopposed request to adjourn the settlement conference scheduled for April 12, 2017 to April 25, 2017. (*See* April 7, 2017 Order). On April 25, 2017, the Court cancelled the settlement conference scheduled for that day due to Defendants' failure to submit a settlement statement to the Court. (*See* April 25, 2017 Order.) On May 1, 2017, the Court held a telephone conference and was informed that Defendants had not produced the discovery ordered by the Court. (*See* May 1, 2017 Mins.) The Court ordered Defendants to show cause by June 1, 2017, why their Answer should not be stricken for failure to participate in

---

[1] Attorney Denis did not file a notice of appearance for Defendant Espana. Nevertheless, the Motion includes Defendant Espana as a movant. (*See* Defs.' Motion to Stay at 1, Dkt. 35.) Defendant Espana has not complied with court orders or engaged in discovery.

discovery.  (*See id.*)  This was the fourth and last time the Court warned Defendants of the possibility of sanctions for their discovery failures.

On June 19, 2017, the Court noted that Defendants failed to comply with this Court's orders and directed Plaintiff to file a motion to strike the Answer.  (*See* June 19, 2017 Order.)  On July 17, 2017, Plaintiff filed the Motion.  (Dkts. 32-34.)  On July 31, 2017, the date by which Defendants were directed to file a response to the Motion, Defendants filed a motion to stay the action, arguing that Defendant Aguilar is "ill with cancer" and that the action should be stayed until she is in "better health to defend this action."  (Defs.' Cross-Motion at 1, Dkt. 35.)  Plaintiff opposed Defendants' motion, emphasizing that, since the commencement of this lawsuit more than one and a half year ago, the parties have made "virtually no subsequent progress because of the Defendants' dilatory conduct."  (Pl.'s Reply at 2, Dkt. 36.)

A motion hearing on Plaintiff's Motion and Defendants' Cross-Motion was scheduled for February 16, 2018.  (*See* February 16, 2018 Mins.)  Defendants failed to appear at the hearing on that day and the Court heard only Plaintiff's argument on his Motion.

## DISCUSSION

### I.    Rule 37(b) Sanctions

Federal Rule of Civil Procedure 37(b) states that if a party "fails to obey an order to provide or permit discovery," the court may issue just orders including "(iii) striking pleadings in whole or in part," and/or "(vi) rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A).  A district court has "wide discretion in imposing sanctions, including severe sanctions" under Rule 37.  *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).  The factors that inform the court's exercise of discretion are:  "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-complaint party had been warned

of the consequences of noncompliance." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks and citations omitted).

"While dispositive relief is a severe sanction that should be granted only sparingly," courts have generally held that an entry of a default judgment is warranted "in the face of willful misconduct" or "a continuing saga of dilatory conduct." *Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d 245, 251 (E.D.N.Y. 2010) (internal citations omitted).  The undersigned finds that striking Defendants' Answer and entering a default judgment as a sanction is appropriate in this case "to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger." *Id.*  (internal quotation marks and citations omitted).

Defendants have demonstrated their willfulness by their repeated and unexplained failure to respond to Plaintiff's discovery requests in any meaningful way, comply with court orders, and appear in a scheduled hearing to defend themselves.  *See, e.g., Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06-CV-1429 (SLT) (RLM), 2008 WL 4179653, at *5 (E.D.N.Y. Sept. 10, 2008) ("[D]efendants' continued disregard of the Court's orders to provide discovery demonstrate that they willfully opted not to continue to defend this action, which warrants the sanction of default.").  Since May 2016 when Plaintiff made his first discovery demands, Defendants have failed to participate in this litigation in any meaningful way.  Defendants' original attorney was relieved from the case due to a "general breakdown in communication."  (*See* September 7, 2016 Order; Motion to Withdraw as Counsel, ¶ 5.)  Thereafter, the Court granted Defendants multiple extensions of deadlines and opportunities to cure deficiencies in document production, including additional time to secure new counsel.  (*See* September 7, 2016 Order; September 30, 2016 Order; October 19, 2016 Order; December 7, 2016 Order; February 15, 2017 Order; March 7, 2017 Order; May 1, 2017 Order.) Defendants failed to comply with court-ordered discovery.  This noncompliance appears not to be a failure by Defendants' counsel, as Defendants' attorney notes that "it is very difficult to get in touch

or speak with his client," and he "has only spoken to Ms. Aguilar once for approximately 15-20 minutes by phone" since he was retained in December 2016. (Defs.' Cross-Motion at 2.) While Defendants seem to argue that there is a medical reason for their noncompliance, the medical report attached to the Cross-Motion dated June 5, 2017 indicates only that Defendant Aguilar was hospitalized from May 4, 2017 to May 11, 2017, and was advised to "stay in absolute rest" until May 30, 2017. (*See id.* at 8, 10.) While presenting a reason for not being able to attend to this matter during a 26-day period, it does not explain why Defendants did not comply with Court orders before May 4, 2017 and after May 30, 2017. Even now, nine months later, Defendants have not communicated to the Court the state of Defendant Aguilar's health, and whether and when she will recover enough to participate in these proceedings. At the hearing on February 16, 2018, specifically scheduled to consider Plaintiff's Motion and Defendants' Cross-Motion, Defendants failed to appear. (*See* February 16, 2018 Mins.) To date, they have offered no explanations for their nonappearance.

Lesser sanctions, such as precluding Defendants from introducing evidence at trial or staying further proceedings, are not appropriate here. Defendants request that the action be indefinitely stayed until Defendant Aguilar is in "better health to defend this action." (Defs.' Cross-Motion at 1.) However, Defendants have not proffered a timeline for such a stay. They also raise this issue for the first time nearly two months after the date of the doctor's note, and more than a year after they were supposed to respond to Plaintiff's initial discovery request. There was no mention of illness as a reason for Defendants' failure to comply with the Court's previous orders. Based on Defendants' failure to abide by numerous court orders and deadlines, there is no indication that any lesser sanctions under Rule 37 would be effective. *See, e.g., Montblanc-Simplo GmbH*, 92 F. Supp. 2d at 252-53 (collecting cases that dismissed actions based on violations of discovery orders and a party's "demonstrated willful disrespect for discovery obligations").

With regard to, "the duration of the period of noncompliance," a period "as brief as a few months have been held to weigh in favor of dispositive sanctions . . . [a]nd periods of six months or more weigh even more heavily toward such remedies." *Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 265-66 (S.D.N.Y. 2015) (collecting cases). This case was filed over two years ago, and Plaintiff first filed a motion to compel discovery a year and a half ago. Even counting only the period after Defendants retained new counsel, it has been more than a year since the third extended deadline of February 1, 2017. (*See* February 3, 2017 Order.) Yet, even after the Court granted repeated extensions of time and ordered compliance, Plaintiff has received virtually no discovery from Defendants. (*See* Transcript of Motion Hearing ("Transcript") at 3; *see also* March 2, 2017 Status Report.) The Court imposed its final order on Defendants to produce all outstanding discovery to Plaintiff on March 7, 2017, but Defendants did not comply. (*See* March 7, 2017 Order.) Instead, on July 31, 2017, they filed the Cross-Motion stating that Defendant Aguilar was hospitalized from May 4, 2017 to May 11, 2017, and was recommended to "lay low and rest at home" until May 30, 3017. (Defs.' Cross-Motion at 1, 8.) The Cross-Motion fails to explain why Defendants did not comply with the Court's orders, up to and including its order of March 7, 2017, to "produce all discovery to Plaintiff." (March 7, 2017 Order.) Defendants' repeated failure to comply with court orders and deadlines for an extended period over several months weigh strongly in favor of dispositive sanctions.

Lastly, the Court has *explicitly* warned Defendants of the consequences of noncompliance at least four times during the course of this litigation. (*See* September 30, 2016 Order; October 19, 2016 Order; March 7, 2017 Order; May 1, 2017 Order.) Plaintiff also stated his intention to seek discovery sanctions as early as March 2, 2017 in the parties' joint status report. (*See* March 2, 2017 Status Report.) Thus, in this case, Defendants "cannot credibly argue that [they were] not sufficiently warned that serious sanctions were imminent." *Guggenheim Capital, LLC v. Birnbaum*, 722

F.3d 444, 453 (2d Cir. 2013); *see also Local Union No. 40 of the Int'l Ass'n of Bridge,* 88 F. Supp. 3d at 267 (concluding that two explicit warnings from the Court was sufficient).

Accordingly, the undersigned recommends a finding that striking Defendants' Answer and entering a default judgment against Defendants is an appropriate sanction in this case, and further recommends that Defendants' Cross-Motion requesting a stay of discovery be denied.

## II. Liability

The principle that a party's default is "deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability" applies "regardless of whether default is entered as a discovery sanction or for failure to defend." *Montblanc-Simplo GmbH*, 692 F. Supp. 2d at 253 (citing *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir. 1995)).  However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  Thus, in this section, the undersigned examines whether Plaintiff's allegations, when accepted as true and drawing all reasonable inferences in favor of Plaintiff, establish liability as a matter of law. *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *see also Greyhound Exhibitgroup, Inc., v. E.LU.L. Realty Corp.,* 973 F.2d 155, 158-59 (2d Cir. 1992).

### a. Employment Relationship Under the FLSA

In order to plead a cause of action under the FLSA, Plaintiff must establish that: (1) defendant is an employer subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213.

The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does

not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013).  A defendant is an FLSA employer if it meets the criteria for either enterprise or individual coverage.  *See Saucedo*, 2016 WL 8376837, at *4.  The enterprise coverage test considers whether the employer

> has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.,* 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).  The individual coverage test takes into account the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'"  *Saucedo,* 2016 WL 8376837, at *4.  "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Plaintiff alleges that, during the relevant period, Defendants have had "employees engaged in commerce," handling, selling or otherwise working on goods that have been moved in or produced by commerce, and that the volume of business exceeded $500,000.  (*See* Compl. ¶ 12.)

Ordinarily, allegations detailing statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce.   In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences.  *See, e.g., Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York."); *Fermin*, 93 F. Supp. 3d at 33 (it was "reasonable to infer that [a Peruvian restaurant] requires a wide variety of materials to operate" and "some of these materials moved or were produced in interstate commerce."); *but see Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012) (recommending the denial of a default judgment where Plaintiff

security guard stated "only conclusory statements about interstate commerce"), *R&R adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012). Here, considering the nature of Defendants' business (remittances and money exchange services), it is reasonable to infer that Plaintiff engaged in interstate commerce by handling and otherwise working on goods—in this case, money—that has been moved from or produced in other states. The undersigned finds Plaintiff's allegations sufficient to establish Defendants' employer status for the purposes of Plaintiff's Motion. *See Fermin*, 93 F. Supp. 3d at 33. Moreover, Defendants may be held jointly and severally liable for FLSA violations since Individual Defendants are owners, officers, directors, and/or managing agents of the Corporate Defendants. *Id.* at 37; *see also Mahoney,* 2016 WL 6585810, at *9.

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employee who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Plaintiff alleges that he was employed by Defendants as a "cashier/customer service attendant." (Compl. ¶¶ 13, 32.) Accepting these well-pleaded allegations as true, the undersigned finds that Plaintiff falls within the FLSA's definition of "employee."

In addition, the undersigned finds that there was an employer-employee relationship between Plaintiff and Individual Defendants under the Second Circuit's "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers." *Irizarry*, 722 F.3d at 104. The economic reality test considers whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted). The Court must consider the "totality of the

circumstances" and no one factor is dispositive.  *Irizarry*, 722 F.3d at 110.  The "ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself."  *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2006)) (internal quotes omitted).

Plaintiff specifically alleges that the Individual Defendants "actively participate[ ] in the day-to-day operations of the Corporate Defendants," "exercise control over the terms and conditions of Plaintiff's employment," and "have the power to: (i) hire and fire employees, (ii) determine and approve rates and methods of employee pay, (iii) determine and approve employee work schedules, (iv) supervise and control the work of employees, and (v) otherwise affect the quality of the employees' employment."  (Compl. ¶¶ 9-11; *see also id.* ¶¶ 19-22.)  Accepting these allegations as true, the undersigned finds that the Individual Defendants were Plaintiff's employers.

Finally, Plaintiff must show that he is not exempt from the FLSA's protections, an analysis that requires more than a recitation of the statutory elements in the Complaint.  *Fermin*, 93 F. Supp. 3d at 32 (citations omitted).  The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted), but they do not include functions such as "cashier/customer service attendant."  (Compl. ¶¶ 13, 32.)  *See also* 29 U.S.C. § 213.  Accordingly, the undersigned is satisfied that Plaintiff is a non-exempt employee under the FLSA.

Plaintiff has shown that the FLSA applies here.

    b.  <u>Employment Relationship Under the NYLL</u>

In order to plead a cause of action under the NYLL, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which governs "any person employed for hire by an employer in any employment."  N.Y. Lab. L. § 190.  Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations.  *Saucedo,* 2016 WL

8376837, at *6. Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Since the parties had an employer-employee relationship under the FLSA, they likewise had an employer-employee relationship under the NYLL.

Plaintiff has shown that the NYLL applies.

    c.  <u>Statute of Limitations</u>

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015). The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015) (internal citations omitted), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Plaintiff filed his Complaint on December 5, 2015. (Dkt. 1.) Since Plaintiff was specifically named in the Complaint, he may recover for FLSA violations that occurred on or after December 5, 2012. Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Plaintiff may recover for NYLL violations that occurred on or after December 5, 2009.

**III.    Plaintiff's Claims and Damages**

Plaintiff seeks compensation for unpaid minimum and overtime wages, spread-of-hour premiums, statutory damages for wage statement and record-keeping requirements, liquidated damages, pre-judgment interest, and attorneys' fees and costs.  (*See* Compl.)  Defendants are jointly and severally liable under the FLSA and NYLL for any damages award made in favor of Plaintiff.

      a.  <u>Minimum and Overtime Wages</u>

An employer who fails to meet its minimum wage obligation is liable to affected employees under both the FLSA and NYLL.  *See* 29 U.S.C. §§ 206(a), 216(b); N.Y. Lab. Law § 652; *see also* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.1.  The burden is on the plaintiff to show that he "was not properly compensated for the work performed," but "it is the employer's responsibility to maintain accurate records of an employee's hours." *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)); *see* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6.  When such records do not exist, a plaintiff can meet his burden "through [his] own recollection." *Padilla*, 643 F. Supp. 2d at 307 (citation omitted).

Moreover, under both statutes, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL).  In order to support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).  Defendant is liable to Plaintiff for overtime compensation that

is calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.102; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *see also Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ) (RLM), 2016 WL 4147143, at \*4 (E.D.N.Y. Aug. 4, 2016).

Plaintiff alleges that he worked 48 hours a week between December 2009 and April 2013, and worked 63 hours a week between May 2013 and September 14, 2015. (Compl. ¶¶ 35-36.) He alleges that, between December 2009 and December 2011, he was paid $190 a week and, between January 2012 and September 2015, he was paid $380 a week. (*Id.* ¶¶ 37-39). To account for the different number of hours per week and the different amount paid, the undersigned considers Plaintiff's damage claims in three separate time periods: (1) December 5, 2009 to December 31, 2011; (2) January 1, 2012 to April 30, 2013; (3) May 1, 2013 to September 14, 2015.

### i.   December 5, 2009 to December 31, 2011

Plaintiff alleges that he worked 48 hours a week and was paid $190 each week between December 5, 2009 and December 31, 2011, a period of 108 weeks. Based on this information, Plaintiff calculates that he was paid $3.96 per hour during this period. (Damages Spreadsheet at 1-3, Dkt. 33-2.) The minimum wage during this period was $7.25 per hour under the FLSA and $7.15 under the NYLL. Thus, using $7.25 per hour and $10.88 per hour as minimum and overtime rates, respectively, Plaintiff was entitled to $40,720.32. Subtracting the actual wages Plaintiff earned during this period ($20,520) from this figure equals $20,200.32. The undersigned finds that Plaintiff is owed **$20,200.32** in unpaid minimum and overtime wages from December 5, 2009 to December 31, 2011.

### ii.   January 1, 2012 to April 30, 2013

Plaintiff alleges that he worked 48 hours a week and was paid $380 per week between January 1, 2012 and April 30, 2013, a period of 69 weeks. Based on this information, Plaintiff

calculates that he was paid $7.92 per hour during this period.  (Damages Spreadsheet at 3-4.)  Since

this rate is higher than the minimum wage rate of $7.25 per hour under the FLSA or $7.15 per hour

under the NYLL, the undersigned uses $7.92 per hour to calculate the wages owed during this

period.  Using $7.92 per hour and $11.88 per hour as minimum and overtime rates, respectively,

Plaintiff was entitled to $28,416.96.  Subtracting the actual wages Plaintiff earned during this period

($26,220) from this figure equals $2,196.96.  The undersigned finds that Plaintiff is owed **$2,196.96**

in overtime wages from January 1, 2012 to April 30, 2013.

   iii. May 1, 2013 to September 14, 2015

  Plaintiff alleges that he worked 63 hours per week and was paid $380 per week between May

1, 2013 and September 14, 2015, a period of 124 weeks.  Based on this information, Plaintiff

calculates that he was paid $6.03 per hour during this period.  (Damages Spreadsheet at 4-7.)  The

minimum wage during this period was $7.25 per hour under the FLSA and it ranged from $7.15 to

$8.75 per hour under the NYLL.  The highest rate between May 1, 2013 and December 30, 2013

was $7.25 per hour; between December 31, 2013 and December 30, 2014 was $8 per hour; between

December 31, 2014 and September 14, 2015 was $8.75 per hour.  The undersigned uses the highest

minimum wage rate for each period to calculate the damages.

  Between May 1, 2013 and December 30, 2013, a period of 35 weeks, Plaintiff was entitled to

$7.25 per hour for 40 hours of straight time, and $10.88 per hour for 23 hours of overtime, a total of

$18,908.40.  Between December 31, 2013 and December 30, 2014, a period of 52 weeks, Plaintiff

was entitled to $8 per hour for 40 hours of straight time, and $12 per hour for 23 hours of overtime,

a total of $30,992.  Between December 31, 2014 and September 14, 2015, a period of 37 weeks,

Plaintiff was entitled to $8.75 per hour for 40 hours of straight time, and $13.13 per hour for 23

hours of overtime, a total of $24,123.63.  Thus, during the entire period from May 1, 2013 to

September 14, 2015, Plaintiff was entitled to $74,024.03.  Subtracting the actual wages Plaintiff

earned during this period ($47,120) from this figure equals $26,904.03.  The undersigned finds that Plaintiff is owed **$26,904.03** in overtime wages from May 1, 2013 to September 14, 2015.

Accordingly, the undersigned recommends that Plaintiff be awarded a total of **$49,301.31 in unpaid minimum and overtime wages**.

> b.  Spread-of-Hour Premium

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  Defendants failed to pay Plaintiff spread-of-hours pay from May 2013 to September 14, 2015, although he worked 10.5 hours each day, 6 days a week.  (Comp. ¶ 36.) Therefore, Defendants are liable to Plaintiff for violating the spread-of-hours requirement.

The spread-of-hours premium is determined by multiplying the minimum wage for the relevant period by the total amount of days that the employee worked more than ten hours. Employees are to be compensated at the applicable minimum wage regardless of their regular rate of pay.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  From May 1, 2013 to December 30, 2013, a period of 35 weeks, Plaintiff was entitled to spread-of-hours pay for 6 days per week at the applicable wage of $7.25 per hour, which equals $1,522.50.  From December 31, 2013 to December 30, 2014, a period of 52 weeks, Plaintiff was entitled to spread-of-hours pay for 6 days per week at the applicable wage of $8 per hour, which equals $2,496.  From December 31, 2014 to September 14, 2015, a period of 37 weeks, Plaintiff was entitled to spread-of-hours pay for 6 days per week at the applicable wage of $8.75 per hour, which equals $1,942.50.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$5,961 for unpaid spread-of-hours premium**.

> c.  Wage Statement and Record-Keeping Requirements

Plaintiff alleges violations of NYLL Section 195(3), the wage statement provision, and Section 195(4), the record-keeping provision. Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. Violations of Section 195(3) carry damages of $250 per work day, for a maximum of $5,000. *Id.* § 198(1-d). Section 195(4) requires employers to "establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records" showing, among others, hours worked, rates of pay, gross wages, and whether the employees were paid by the hour, shift, day, week, salary, or commission. However, "nothing in the NYLL authorizes an independent cause of action based on a violation of Section 195(4)" for failure to maintain payroll records. *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 571 (E.D.N.Y. 2015)

Since Plaintiff worked for Defendants more than 20 days, the undersigned recommends that Plaintiff be awarded the maximum **statutory damages of $5,000** for wage statement violations under Section 195(3)**.**

d. Liquidated Damages

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663. If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages. 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a). Since Defendants have defaulted, no good faith exists and liquidated damages are appropriate. *See Herrera*, 2015 WL 1529653, at *12 (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA.  *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (following *Chowdhury*).  In light of the principle that "the law providing the greatest recovery will govern," Plaintiff may be awarded liquidated damages pursuant to the NYLL.  *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (internal citations omitted).  Accordingly, the undersigned recommends that liquidated damages be awarded to Plaintiff on his minimum and overtime wage claims and spread-of-hour pay claim under the NYLL.

Plaintiff may recover 25% of the damages due on any claims pre-dating the April 8, 2011 amendment of the NYLL, and 100% of the damages due on claims arising after the amendment.  N.Y. Lab. Law § 198(1-a).  Thus, for the period from December 5, 2009 to April 8, 2011, Plaintiff is entitled to liquidated damages equal to 25% of the wages owed ($13,652.80),[2] *i.e.,* $3,413.20.  For the period from April 9, 2011 to September 14, 2015, Plaintiff is entitled to liquidated damages equal to 100% of the wages owed, *i.e.,* $35,648.51.[3]

Accordingly, the undersigned recommends an award of **$39,061.71 in liquidated damages.**

e.   Pre-Judgment Interest

Plaintiff sought pre-judgment interest in the Complaint, but subsequent submissions by counsel such as the Memorandum of Law and attorney affidavit do not mention such interest or provide calculations to support the request.  (*See* Compl. at 16; Pl.'s Mem.; Clienti Decl.)  Accordingly, the undersigned recommends that the Court consider this part of Plaintiff's damages

---

[2] During this period, Plaintiff was entitled to [ $7.25 per hour (40 hours) + $11.88 per hour (8 hours) ] x 70 weeks, which equals $26,952.80.  Subtracting the actual wages Plaintiff earned during this period ($190 per week times 70 weeks, which equals $13,300) equals $13,652.80.
[3] Total waged owed during the entire period between December 5, 2009 and September 14, 2015 ($49,301.31) minus total waged owed between December 5, 2009 to April 8, 2011 ($13,652.80) equals $35,648.51.

claim abandoned.  *See Melgadejo v. S & D Fruits & Vegetables Inc.,* No. 12-CV-6852 (RA) (HBP), 2015

WL 10353140, at *2 n.1 (S.D.N.Y. Oct. 23, 2015), *R&R adopted sub nom. Melgadejo v. S&D Fruits &*

*Vegetables Inc.*, No. 12-CV-6852 (RA), 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016).

       f.   <u>Attorneys' Fees and Costs</u>

      Plaintiff's counsel seeks reasonable attorneys' fees, which he is entitled to recover under

both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law. § 663(1).  District courts have

broad discretion to determine the amount awarded, and the party requesting fees must provide

documentation to support its claims.  *Mahoney*, 2016 WL 6585810, at *18.  Courts calculate

appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the

matter by a reasonable hourly rate.  *Saucedo*, 2016 WL 8376837, at *16.  This "lodestar method" may

be adjusted based on the circumstances of the case.  *Id.*

      A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay."

*Saucedo*, 2016 WL 8376837, at *16-17.  The Second Circuit and various district courts have identified

case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates

requested are proportional to fees awarded to other attorneys performing similar services with

comparable skill, expertise and reputation.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of*

*Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19.  In recent years,

decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately

$300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80

for legal support staff."  *Id.* (quoting *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*,

12-CV-5737 (ILG)(JMA), 2014 WL 4954629, at *9 (E.D.N.Y. Sep. 15, 2014)).

      Plaintiff submitted a contemporaneous attorney timesheet and an attorney affidavit briefly

discussing counsel's qualifications.  (Clienti Decl. ¶¶ 48-50; *id.* Ex. C.)  Plaintiff requests an hourly

rate of $400 per hour for attorney Clienti.  (*Id.* ¶ 49.)  Mr. Clienti has 20 years of experience in civil

litigation and has handled over 400 wage and hour cases over the past 8 years. (*Id.*) Given his overall experience, the undersigned finds the requested rates reasonable. Plaintiff also requests $100 per hour for Mr. Clienti's paralegal, but does not provide any information for this person. (*Id.*) Thus, the undersigned recommends a rate of $60 per hour for the paralegal.

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Counsel billed a total of 70.3 hours over more than two years. (Clienti Decl. ¶ 49.) Upon carefully examining the attorney timesheet, the undersigned finds the total hours billed reasonable.

Attorney Clienti billed a total of $24,840 and his paralegal billed $670. Adjusting the paralegal's hourly rate to $60 an hour would reduce the amount billed by the paralegal to $402[4] and the total amount billed to $25,242.

Plaintiff is also entitled to recover reasonable costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ)(JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016). Counsel affirms that he spent a total of $473 in costs, which consists of $400 for filing fee, $140 for service of process and $33 for photocopies. (Clienti Decl. ¶ 51; *id.* Ex. C.) The undersigned finds these costs reasonable.

Accordingly, the undersigned recommends an award of **$25,242 in attorneys' fees and $573 in costs**.

## <u>CONCLUSION</u>

Based on the foregoing, the undersigned respectfully recommends that Plaintiff's Motion to Strike Answer and Enter Default Judgment be granted, Defendants' Motion to Stay the Action be denied, and Plaintiff be awarded damages in the total sum of **$99,324.02** comprised of:

---

[4] $670 divided by $100 per hour equals 6.7 hours; 6.7 hours times $60 per hour equals $402.

(i) **$49,301.31** in unpaid minimum and overtime wages;

(ii) **$5,961** in unpaid spread-of-hours premium;

(iii) **$39,061.71** in liquidated damages; and

(iv) **$5,000** in statutory damages for wage statement violations.

The undersigned also recommends that Plaintiff be awarded **$25,815** in attorneys' fees and costs.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          March 14, 2018